# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4822 | **DATE** | 10/10/2002 |
| **CASE TITLE** | USA vs. BDO Seidman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. This action is referred to Magistrate Judge Martin Ashman. BDO is ordered to deliver the privilege-claimed documents to the Magistrate Judge's chambers forthwith. This Court requests prompt input from each party on this subject by written submission delivered to this Court's chambers on or before November 18, 2002, so that Magistrate Judge Ashman's document review may take place with that supplemental consideration in mind.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | OCT 15 2002 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 10/10/2002 |
| | | date mailed notice |
| SN | courtroom deputy's initials | SN |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 02 C 4822 |
| ) | |
| BDO SEIDMAN, LLP, etc., ) | |
| ) | |
| Respondent. ) | |

**DOCKETED**

**OCT 1 5 2002**

MEMORANDUM ORDER

This effort by the United States for enforcement of a group of summonses against accounting firm BDO Seidman, LLP ("BDO") has generated, during its three months of existence, more than one bulky submission of paperwork from each side of the controversy. But while the situation in that respect does not fit the adage variously ascribed to a number of sources,[1] but perhaps best known in Horace's version--"the lab'ring mountain scarce brings forth a mouse"[2]-- the situation is not nearly as complex as BDO attempts to portray it.

What is at issue here is an investigation of BDO as to its potential liability under the Internal Revenue Code ("Code")[3] for promoting potentially abusive tax shelters, which the government

---

[1] Bartlett's Familiar Quotations lists Aesop and Phaedrus as well as Horace.

[2] In the original, "parturient montes, nascetur ridiculus mus."

[3] All relevant Code provisions are identified here without repeating "26 U.S.C.," the title that embodies the Code's provisions.

asserts the firm failed to disclose properly in accordance with statutory requirements. That investigation implicates a host of statutory provisions, including Code §§6111, 6112, 6694, 6700, 6701, 6707, 6708, 7407 and 7408 at a minimum. And for more than two decades this Court has looked to United States v. Kis, 658 F.2d 526 (7th Cir. 1981)(which in turn drew on the seminal decision in United States v. Powell, 379 U.S. 48 (1964)) for the operative rules that govern judicial enforcement of such summonses.

Kis has similarly been reaffirmed and applied regularly by our Court of Appeals. As succinctly put in 2121 Arlington Heights Corp. v. IRS, 109 F.3d 1221, 1224 (7th Cir. 1997) (citations, including those to Kis and Powell, omitted):

> First, the government must make a prima facie case that the IRS issued the summons in good faith. That isn't much of a hurdle. The government must only show: the investigation underlying the summons has a legitimate purpose; the information sought may be relevant to that purpose; the information is not already in the IRS's hands; and the IRS has followed the statutory steps for issuing a summons. The government typically makes that showing through the affidavit of the revenue agent conducting the audit.

In those terms this is not a difficult case. All four of those prima facie elements are indisputably present, even though BDO makes unpersuasive efforts to challenge each of them.

As for BDO's questioning the "legitimate purpose" factor, that fails utterly in the face (among other things) of the decision in Tiffany Fine Arts, Inc. v. United States, 469 U.S.

2

310 (1985). That unanimous decision validated the use of "dual purpose" summonses, so long as the requested information is relevant to a legitimate investigation of a summoned taxpayer such as BDO--and that certainly applies here.

As for the relevance component (with its corollary requirement of no overbreadth), United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984)(emphasis in original) supplies definitive support for the government's position that the test is one requiring only "even potential relevance to an ongoing investigation, without reference to its admissibility." And in addition to our Court of Appeals' like holding in reliance on Arthur Young in 2121 Arlington Heights, 109 F.3d at 1224, Government Mem. 7 n.5 lines up a plethora of cases from other Courts of Appeals applying the same undemanding standard.

Next BDO throws up a really unsupported objection to the "already in the IRS' possession" factor. On that score the supplemental declaration of Revenue Agent Michael Friedman provides a compelling showing that the objection cannot and does not prevail.

Finally, BDO does not directly charge bad faith on the government's part--instead it casts a number of pejorative aspersions that might suggest such an evil motive. But this Court has already indicated, and it reconfirms here, that those aspersions do not begin to meet the government's persuasive

3

showing of a good faith investigation stemming from information provided to it.

All of that, then, leaves only BDO's claim of privilege under Code §7525 (the statutory equivalent for accountants of the common law attorney-client privilege). In that respect the United States is correct that BDO's original blanket assertion of that privilege must fail (see, e.g., United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983)). But nothing daunted, BDO has most recently threatened to overwhelm the court by tendering two massive privilege logs--one of 86 pages listing 826 documents, and the other of 42 pages listing 293 documents--that identify the documents for all of which it claims privileged status.

To be sure, that nearly mind-boggling presentation necessarily does violence to the whole notion that these summons enforcement proceedings are supposed to be "summary" in nature and capable of swift disposition, so that an investigation that has cleared all the hurdles can go forward promptly (see, e.g., Donaldson v. United States, 400 U.S. 517, 529 (1971) and Kis, 658 F.2d at 536). But unless the United States can suggest otherwise, it appears that there is no alternative to a one-by-one examination of the documents themselves (which have not been delivered to this Court by BDO together with the privilege logs).

This Court is understandably not especially appreciative of the proffered opportunity to spend its time in that process

4

(something that appears to be much the equivalent of the task imposed on the new law firm associate, whose only exposure to what is mislabeled the "litigation practice" is an assignment to rummage through files in a dusty warehouse, either in pursuit of or in response to discovery requests). In light of the demands imposed by its full-scale civil and criminal calendar, together with its commitment to sit by designation early next month with the Court of Appeals for the First Circuit, this Court reluctantly (and with all due apologies) refers the matter to Magistrate Judge Martin Ashman (to whose calendar this case is also assigned) for that purpose. BDO is ordered to deliver the privilege-claimed documents to the Magistrate Judge's chambers forthwith.

One last point has occurred to this Court--something that has not been addressed by either of the parties. Suppose that some of the documents for which BDO claims privilege could otherwise fit within the standards governing the attorney-client privilege (and hence the equivalent statutory accountant-client privilege), but that they relate to the types of "abusive tax shelters" that have triggered the congressional enactment at issue here. In that event, would the utilization of such an "abusive tax shelter" by a taxpayer to whom BDO has given advice as to its use create the potential of criminal as well as civil liability on the taxpayer's part? And if so, would that trigger

the application of the crime-fraud exception to the privilege? This Court requests prompt input from each party on this subject by written submissions delivered to this Court's chambers on or before November 18, 2002,[4] so that Magistrate Judge Ashman's document review may take place with that supplemental consideration in mind.

_____
Milton I. Shadur
Senior United States District Judge

Date: October 10, 2002

---

[4] Under the circumstances, of course, copies of those submissions should also be delivered to Magistrate Judge Ashman.

6