UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>BDO SEIDMAN, LLP,<br><br>Respondent,<br><br>and<br><br>ROBERT S. CUILLO, GARY ERVIN, ROBERT ERVIN, TIMOTHY ERVIN, DSG IRREVOCABLE TRUST, RICHARD GARMAN AND JOHNNA COATS CHAND GUPTA (DRG IRREVOCABLE TRUST), JAI N. GUPTA, JAI N. GUPTA REVOCABLE TRUST, RAM GUPTA, SHASHI A. GUPTA, SHASHI A. GUPTA REVOCABLE TRUST, BILLY L. "DWAYNE" HAWKINS, SHAHID KHAN, RAY LANE, R.K. LOWRY, JR., JOHN P. MOFFITT, ARLENE NUSSDORF, GLENN NUSSDORF AND CLAUDINE STRUM, GLENN NUSSDORF TRUST, STEPHEN AND ALICIA NUSSDORF, STEPHEN NUSSDORF TRUST, RUTH NUSSDORF, QUALITY KING, DH PETERSBURG INVESTMENTS, LLC<br><br>Intervenors. | § | Civil Action No. 02 C 4822<br><br>Judge James F. Holderman<br><br>FILED<br>JUN 16 2004<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO INTERVENE

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Robert S. Cuillo, Gary Ervin, Timothy Ervin, Robert Ervin, DSG Irrevocable Trust, Richard Garman and Johnna Coats, Chand Gupta, Jai N. Gupta, Jai N. Gupta Revocable Trust, Ram Gupta, Shashi A. Gupta, Shashi A.

122

Gupta, Jai N. Gupta, Jai N. Gupta Revocable Trust, Ram Gupta, Shashi A. Gupta, Shashi A. Gupta Revocable Trust, Billy L. "Dwayne" Hawkins, Shahid Khan, Ray Lane, R.K. Lowry, Jr., John P. Moffitt, Arlene Nussdorf, Glenn Nussdorf and Claudine Strum, Glenn Nussdorf Trust, Stephen and Alicia Nussdorf, Stephen Nussdorf Trust, Ruth Nussdorf, Quality King, DH Petersburg Investments, LLC, (collectively the "Intervenors"), by their undersigned attorneys, submit this Memorandum of Law in Support of their Motion to Intervene in this matter.

Intervenors seek to intervene for the limited purpose of addressing issues relating to the summonses issued by Petitioner United States of America ("Petitioner") to Respondent BDO Seidman, LLP, ("BDO") (the "Summonses") insofar as the Summonses relate to Intervenors, including, but not limited to, objecting to disclosure of certain documents that are privileged under the Section 7525 federally authorized tax practitioner privilege ("Section 7525 privilege"), the common law attorney-client privilege, or the work product doctrine.

In support of this Motion, Intervenors state as follows:

**Procedural Background**

1. In an Order dated November 4, 2003, this Court ordered BDO to communicate with BDO clients listed on BDO privilege logs for the purpose of determining whether they intended to continue to assert certain privileges. Shortly thereafter, Intervenors requested that BDO continue to assert such privileges. On or about March 31, 2004, Petitioner filed a Motion to Compel Compliance With Order of Production and Order to Produce Documents Withheld Upon Claims of Privilege (the "Motion") pursuant to which the government seeks disclosure of documents identified on the BDO client privilege log.

2. In an Agreed Order dated May 7, 2004, in response to Petitioner's Motion, this Court ordered BDO to notify all persons of the current status of the proceeding within 10 days. In

addition, the Court also ordered all interested persons who intend "to continue to assert privileges with respect to any document on the BDO Client Log shall seek to intervene in this proceeding for the sole purpose of continuing to assert privileges and file an objection to disclosure, which shall contain supporting authority demonstrating why BDO should not be ordered to provide the Government with the documents on the BDO Client Log," and to do so no later than June 16, 2004.

3. BDO, through its attorneys, then mailed a letter dated May 13, 2004 ("Dewey Ballantine Letter") to the Intervenors informing them of the efforts to enforce the Summonses and describing the specific procedures contained in the Agreed Order.

**I.**

**Certain Documents Are Protected from Disclosure Under the Decisional Law of the Seventh Circuit Court of Appeals and of the U.S. District Court for the Northern District of Illinois**

**A. This is Not an Identity Privilege Case.**

4. Intervenors stipulate that this is not an identity privilege case. The government is already well aware of the identities of Intervenors. If this were an identity privilege case, then this case would clearly be governed by the 7th Circuit's decision in *United States v. BDO Seidman*, 337 F.3d 802 (7th Cir. 2003) (hereafter sometimes cited as "*BDO Seidman*").

5. In *BDO Seidman,* the Seventh Circuit held that the identities of clients who had consulted with BDO Seidman in connection with their participation in allegedly abusive tax shelters were not privileged by 26 U.S.C. § 7525 (I.R.C. Section 7525). In doing so, the Seventh Circuit found that no confidential communications would be disclosed if the identities of BDO's clients were disclosed, and also found, because of certain disclosure requirements under I.R.C. Section 6112, BDO's clients did not have an expectation of confidentiality in their communications with BDO.

337 F.3d at 812. Those issues are thus resolved for purposes of this case. *See also, United States v. Sidley Austin Brown & Wood LLP,* No. 03-C-9355, 2004 WL 816448, at *5 (N.D.Ill. Apr. 15, 2004) (hereafter cited as "*Sidley Austin*").

6. Because this case does not involve an identity issue, I.R.C. Section 6112 does not govern whether Intervenors' documents are privileged. I.R.C. Section 6112 is a list maintenance requirement and requires an organizer or seller to maintain a list identifying particular persons. Because the government is already aware of Intervenors' identities, this section has no applicability to whether Intervenors' documents can remain protected from disclosure by the Section 7525 privilege and/or the attorney client privilege. As proof, this Court need not look any further than this Court's decision in *United States v. Arthur Andersen*, 273 F.Supp.2d 955, (N.D.Ill. 2003), in which it discussed "the interaction of § 7525 and § 6112, providing that 'in any case in which an organizer or seller of a potentially abusive tax shelter believes that information required to be maintained as part of the list for that tax shelter . . . constitutes confidential tax advice protected under Section 7525(a), such information may be withheld from the Service . . .'" *Id.* at 960, *citing* Treas. Reg. § 301.6112-1T Q & A-17(b)(2000).

**B. The Documents in this Case are Different Than the Non-privileged Documents in *BDO Seidman.***

7. The documents which contained the Does identities in *BDO Seidman*, and which the Does sought to protect, were "all confidentiality agreements, consulting agreements and engagement letters entered into between BDO and the Does." *BDO Seidman,* 337 F.3d at 807. The Does in *BDO Seidman* "conceded that, aside from the fact that the documents reveal their identities as BDO clients who invested in at least one of the 20 types of tax shelters described in the summonses, *the documents themselves do not contain any otherwise privileged communication*." *Id.* at 807 (emphasis added).

8. Intervenors submit that the documents sought to be protected from disclosure are not *BDO Seidman* type documents. Rather, as noted on the attached BDO privilege log, Intervenors seek to protect tax opinions, drafts of tax opinions, the underlying correspondence and other general documents related to obtaining tax advice.

### C. This District Court in *Arthur Andersen* Found that Even Though There Was No Identity Privilege, Certain Underlying Documents Were Subject to Confidentiality under I.R.C. Section 7525 and its Privilege Protections.

9. In *United States v. Andersen, LLP*, 2003 WL 21956404 (N.D.Ill. Aug. 15, 2003), the U.S. District Court for the Northern District of Illinois considered issues similar to those present in *BDO Seidman* except for a controlling difference with respect to the nature of the underlying documents sought to be protected. The District Court, based on *BDO Siedman*, concluded that the documents at issue in that case were privileged.

10. In *Arthur Andersen*, the District Court concluded that some documents fell under the Section 7525 privilege. After conducting an *in camera* review of a sufficient number of documents, the Court concluded that "(1) the documents sufficiently established the requisite elements to invoke the §7525(a) privilege; and (2) that the factual differences between the documents produced in the instant case and those produced on limited remand in the *BDO Seidman* case warranted our finding that the privilege was properly asserted here." *Id.* at *3.

11. As noted above, Intervenors rely on the fact that the document they seek to protect under the Section 7525 privilege or the attorney-client privilege are clearly distinguishable from, and do not fall under the ambit of confidentiality agreements, consulting agreements and engagement letters present in *BDO Seidman*. Rather, should this Court deem it necessary to conduct an *in camera* review of documents, they are confident that this Court will reach the same result as it did in *Arthur Andersen*-- namely, that the documents are protected by the Section 7525 privilege.

**D. The Seventh Circuit Court of Appeals has Held that Opinion Letters are Protected by the Attorney-Client Privilege.**

12. It is beyond question that opinion letters involving legal issues are protected by the attorney-client privilege. *See United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("Communications from a client that neither reflect the lawyer's thinking nor are made for the purpose of eliciting the lawyer's professional advice or other legal assistance are not privileged. The information that a person furnishes the preparer of his tax return is furnished for the purpose of enabling the preparation of the return, not the preparation of a brief or an opinion letter. Such information therefore is not privileged."). Drafting legal opinions is the epitome of what a transactional tax attorney does on a daily basis. This case should not serve as a statement that tax opinions written by transactional tax attorneys have no place--they are performing a legal function. Drafting a legal opinion entails the sort of "lawyer's work" and "legal-representation function" that the 7th Circuit had in mind in *Frederick. See id* at 501, 502. Specifically, it entails having "fine-tuned readings of the Internal Revenue Code, case law, and regulatory promulgations . . . to interpret law and make careful judgments about precedent and authorities." *See* Lowy and Vasquez, "Attorney-Client Privilege: When Does Tax Advice Qualify as 'Legal Advice,'" TAX ANALYSTS TAX NOTES SPECIAL REPORT, Dec. 9, 2002, p. 1335, 1337, *reprinted in* THE MONTHLY DIGEST OF TAX ARTICLES, Oct. 2003.

13. Given that the Section 7525 privilege has been analogized to the scope of the attorney-client privilege, opinions from an accounting firm that provides tax advice should be protected from disclosure to the same extent as an opinion on the same subject from an attorney to the client. *See BDO Seidman*, 337 F.3d at 810. ("Because the scope of the tax practitioner-client privilege depends on the scope of the common law protections of confidential attorney-client communications, we must look to the body of common law interpreting the attorney-client

privilege to interpret the 7525 privilege."); *Sidley Austin Brown & Wood LLP,* 2004 WL 816448 at *4, ("For all practical purposes, the Seventh Circuit's decision in *BDO Seidman* speaks as much to the scope of the attorney-client privilege as it does to the tax practitioner-taxpayer privilege."). When a federally authorized tax practitioner writes a tax opinion, that opinion constitutes "tax advice work" and a "tax advice representation function" (stated in I.R.C. Section 7525 terms), akin to the "lawyer's work" and the "legal-representation function" phrases noted in *Frederick.* After all, a federally authorized tax practitioner who writes a tax opinion must have "fine-tuned readings of the Internal Revenue Code, case law, and regulatory promulgations . . . to interpret law and make careful judgments about precedent and authorities." *See* Lowy and Vasquez, "Attorney-Client Privilege: When Does Tax Advice Qualify as 'Legal Advice,'" TAX ANALYSTS TAX NOTES SPECIAL REPORT, Dec. 9, 2002, p. 1335, 1337, *reprinted in* THE MONTHLY DIGEST OF TAX ARTICLES, Oct. 2003. In addition, when a federally authorized tax practitioner drafts an opinion, it is completely different than other items that typically constitute "return preparation" materials (i.e., Forms 1099, W-2, K-1, statements reflecting mortgage interest, student loan interest, real estate taxes, and proof that certain charitable contributions were made).

14. Just as tax opinions between accountant and client are protected by the Section 7525 privilege, then clearly draft tax opinions and the underlying correspondence and documents relating to the drafting of tax opinions must also be privileged.

## II.

## The Intervenors Are Entitled to Intervene in This Proceeding as a Matter of Right

15. The documents relating to Intervenors in the BDO privilege log are subject to the Section 7525 privilege and/or the common law attorney-client privilege, thus creating a right on the part of Intervenors to intervene in the action and assert that privilege under Fed. R. Civ. P. 24(a).

16. Fed. R. Civ. P. 24(a) provides, in pertinent part, that upon timely application anyone shall be permitted to intervene in an action as a matter of right:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

17. Intervenors satisfy these Rule 24(a) standards. First, Intervenors have made "timely application," and they have met all of the Court imposed deadlines for filing objections to disclosure. Second, Intervenors assert an interest in the "transaction" (*i.e.*, the disclosure of privileged documents to the IRS) by virtue of their assertion that the documents at issue fall within the Section 7525 privilege or attorney-client privilege protection. Third, no existing party adequately represents Intervenors' interests. BDO does not have the same interest or incentives as Intervenors to assert and defend their privileges. To date, BDO has honored Intervenors' request not to disclose Intervenors' documents to Petitioner. But, in this Court's recent Agreed Order, it is clear that BDO's protection of these documents is nearing an end. Rather, the Court made it clear that Intervenors must themselves seek to intervene and object to disclosure. These privileges belong to the Intervenors alone. *See In re Special September 1978 Grand Jury (II)*, 640 F. 2d 49, 62 (7th Cir.1980) (attorney-client privilege belongs to the client alone); *In re*

*Walsh*, 623 F.2d 489, 493 (7th Cir. 1980). Accordingly, Intervenors are the true, and only, interested parties.

18. The attorney-client privilege is intended to protect against the disclosure of confidential communications between an attorney and a client. With respect to the documents about which Intervenors assert attorney-client privilege protection, Intervenors clearly satisfy all elements of the Seventh Circuit's attorney-client privilege standard. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Namely, Intervenors received legal advice from a law firm, acting in the capacity as their legal advisor; the communications, including the opinion letters, were made in confidence and thus are permanently protected from disclosure by the law firm.

19. Similar to the attorney-client privilege, the Section 7525 privilege is intended to protect against the disclosure of confidential communications between a federally authorized tax practitioner and a client. With respect to the documents about which Intervenors assert Section 7525 protection, Intervenors satisfy all elements of I.R.C. Section 7525. Namely, Intervenors received tax advice from BDO, a major accounting firm and clearly a federally authorized practitioner within the meaning of I.R.C. Section 7525, which was at the time acting in the capacity as their tax advisor. The communications, including the opinion letters, were made in confidence and thus are permanently protected from disclosure by BDO unless the privilege is waived, which has not occurred in this case.

20. Intervenors had, and continue to have, an expectation of confidentiality. This expectation is reasonable given the purposes of the communications at issue. This tax advice came in the form of opinion letters. Opinion letters are clearly protected by the attorney-client privilege, and by analogy, the Section 7525 privilege. *See Frederick*, 182 F.3d at 500 ("Communications from a client that neither reflect the lawyer's thinking nor are made for the

purpose of eliciting the lawyer's professional advice or other legal assistance are not privileged. The information that a person provides the preparer of his tax return is furnished for the purpose of enabling the preparation of the return, not the preparation of a brief or an opinion letter. Such information therefore is not privileged."). Until a client chooses to reveal the opinion letter and its contents, it shall remain covered by the privilege. Although a transaction may end up on the tax return, the actual BDO opinion letter never would.

21. As the Seventh Circuit stated in *BDO Seidman*, "[a]mong the essential elements of the attorney-client privilege are the requirements that the communication be made to the attorney in confidence." *BDO Seidman*, 337 F.3d at 811. Moreover, the Court states that the privilege was established to protect those confidences which were shared with the intent that they remain confidential, and not those things which were never shared with this intent. The Court goes on to state that courts have consistently refused to apply the privilege to any information which is shared with the attorney under the knowledge or assumption that such information would be shared with others. Finally, the privilege will only apply where the information was shared for the purpose of obtaining legal or tax advice.

22. Unlike the communications at issue in the *BDO Seidman* case, the documents and information at issue here meet the criteria for maintaining the confidence of attorney-client communication, as set forth in the foregoing discussions.

23. The attorney-client privilege has been a part of our system of jurisprudence throughout the history of this country and is derived from centuries of the English Common Law. In enacting Section 7525 to create a privilege, Congress did not narrow or dispense with this or any other privilege for the sake of administrative convenience in disputes between the Internal Revenue Service and mere citizens.

24. The relevant case law supports intervention as a matter of right where, as here, a privilege holder seeks to intervene for the purpose of asserting its privilege. *See, e.g., In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client and work product privilege qualify as sufficient interest to ground intervention as of right"); *United States v. Ritchie*, 15 F.3d 592, 597 (6th Cir. 1994) (stating that a "John Doe" taxpayer may intervene in a summons enforcement proceeding brought by the IRS against a third party). Accordingly, Intervenors should be allowed to intervene as a matter of right under Rule 24(a).

**III.**

**Alternatively, Intervenors are Entitled to Permissively Intervene in This Proceeding**

25. In the alternative, if this Court finds that Intervenors are not entitled to intervene as a matter of right under Rule 24(a), the Intervenors hereby request that this Court allow a permissive intervention pursuant to Rule 24(b). Rule 24(b) authorizes a permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). Here, as demonstrated above, Intervenors' privilege directly relates to communications between them and BDO for the purpose of obtaining tax advice.

26. As this Court held in *Sidley Austin*, 2004 WL 816448, at *1 (N.D.Ill. Apr. 28, 2004), merely being involved in an IRS audit may provide a sufficient basis for allowing a citizen to permissively intervene in a John Doe summons proceeding.

27. Moreover, this intervention will not "unduly delay or prejudice the adjudication of the rights of" Petitioner or BDO in that the determination of privilege can be made by using the same processes normally used for such determinations after intervention is permitted. *Id.*

**Conclusion**

For the reasons stated above, this Court should grant this Motion to Intervene in its entirety and grant Intervenors such other and further relief as is appropriate.

Respectfully submitted,

Robert S. Cuillo
Gary Ervin
Robert Ervin
Timothy Ervin
DSG Irrevocable Trust
Chand Gupta
Jai N. Gupta
Jai N. Gupta Revocable Trust
Ram Gupta
Shashi A. Gupta
Shashi A. Gupta Revocable Trust
Billy L. "Dwayne" Hawkins
Richard Garman and Johnna Coats
Shahid Khan
Ray Lane
R.K. Lowry ,Jr.
John P. Moffitt
Arlene Nussdorf
Glenn Nussdorf and Claudine Strum
Glenn Nussdorf Trust
Stephen and Alicia Nussdorf
Stephen Nussdorf Trust
Ruth Nussdorf
Quality King
DH Petersburg Investments, LLC

INTERVENORS

By: ______________________
GEORGE W. CONNELLY
Chamberlain, Hrdlicka, White,
Williams & Martin
1200 Smith Street, 14th Floor
Houston, Texas 77002
Telephone: (713) 658-1818
Facsimile: (713) 658-2553

By: ______________________
JUAN F. VASQUEZ, JR.
Chamberlain, Hrdlicka, White,
Williams & Martin
1200 Smith Street, 14th Floor
Houston, Texas 77002
Telephone: (713) 658-1818
Facsimile: (713) 658-2553

COUNSEL FOR INTERVENORS

RICHARD HELLERMAN
Arnstein & Lehr LLP, *of counsel*
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
(312) 876-7100
Designated Local Counsel for Intervenors

**CERTIFICATE OF SERVICE**

Richard K. Hellerman, an attorney, certifies that he served a copy of the foregoing Memorandum of Law in Support of Motion to Intervene by causing a true and correct copy thereof to be delivered by messenger to:

United States Attorney's Office
219 South Dearborn Street, Suite 500
Chicago, Illinois 60604
Fax: (312) 353-2067

and by facsimile and by Federal Express to:

John A. Lindquist, III
U.S. Department of Justice
Tax Division
555 Fourth Street N.W., Room 7836
Washington, D.C. 20004
Fax: (202) 514-5328

and by Federal Express to:

Michael Hefter
Dewey Ballantine, LLP
1301 Avenue of the Americas
New York, NY 10019

on this 16th day of June, 2004.

Richard Hellerman

899514_1