# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4822 | **DATE** | June 28, 2004 |
| **CASE TITLE** | USA vs. BDO SEIDMAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, the 110 documents submitted for in camera inspection and claimed by BDO on its own behalf to be protected by the attorney-client privilege and/or work product doctrine, the government's motion to compel is granted with respect to redacted document numbers 29,60,61,105,107 and 108. BDO is ordered to turn these redacted documents over to the IRS no later than July 12, 2004. The government's motion is denied as to all other documents. All previously set dates shall stand.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| ✓ No notices required, advised in open court. | | number of notices | |
| | No notices required. | | |
| ✓ Notices mailed by judge's staff. | | JUN 29 2004 date docketed | 127 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | GMA docketing deputy initials |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | | 6-28-04 date mailed notice |
| JS6 ✓ | courtroom deputy's initials | 2004 JUN 29 AM 7:51 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 02 C 4822 |
| | ) | |
| BDO Seidman, LLP, regarding IRS | ) | |
| examination of BDO Seidman, LLP, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |

DOCKETED
JUN 2 9 2004

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

As part of the government's crackdown on abusive tax shelters, the petitioner Internal Revenue Service ("IRS" or "government"), on July 9, 2002, filed a petition to enforce a series of twenty summonses served on BDO Seidman, LLP ("BDO"). After almost two years of litigation, including an appeal to the Court of Appeals for the Seventh Circuit, 337 F.3d 832 (7th Cir. 2003), BDO has whittled down its own claims of privilege to 110 documents.[1] BDO asserts that the documents in question are protected from disclosure by the attorney-client privilege, the work product doctrine, or both. BDO does not assert any privilege under 26 U.S.C. § 7525, the tax practitioner privilege, to these documents.

---

[1] Individual current or former clients of BDO have asserted their individual privilege claims regarding certain documents responsive to these same IRS summonses. These individual privilege claims are being briefed under a separate schedule (Dkt. No. 111) and will be addressed in a subsequent order.

1

The government now seeks to compel compliance with an order of production and seeks an order to produce certain documents claimed by BDO to be privileged. Pursuant to this court's order setting the briefing schedule on this matter, BDO submitted each of the 110 documents to this court for *in camera* inspection.[2] This court has reviewed each document. After carefully considering the parties' arguments, this court finds that, with respect to the 110 documents to which BDO asserts a privilege on its own behalf, the government's motion is denied in part and granted in part.

The government advances three primary arguments[3] in support of its motion. First, it argues that because three of the law firms involved were "co-promoters" or marketing partners with BDO, the communication between these firms and BDO was not for the purpose of securing legal advice and thus not within the scope of the attorney-client privilege. Second, the government contends that the six documents claimed to be protected work product are not because BDO has failed to show that the documents are covered by this doctrine. Finally, the government asserts that even if certain communications fall within the attorney-client privilege, the documents reflecting those communications are not protected because, pursuant to the crime-fraud exception, those documents were made for the purposes of furthering a crime or fraud. Each of these arguments is considered below.

---

[2] As a part of its submission of the documents for *in camera* review, BDO filed a privilege log (Dkt. No. 109) in an appropriate chart format containing the following designated columns: Document Numbers, Bates Range, Document Date, Document Type, Number of Pages, Author, Addressee, Copies Provided To, Why Document Created, Subject Matter, and Grounds. Reference in this opinion to specific *in camera* documents is by the designated document number.

[3] The government has withdrawn its timeliness arguments, and because BDO is not asserting a § 7525 privilege, the government's arguments concerning this privilege are not relevant. The section 7525 privilege, *inter alia*, has been claimed by BDO clients.

2

I.  Attorney-Client Privilege

In this circuit, courts follow the classic definition of attorney-client privilege first articulated by Dean Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). Because BDO is the party seeking to establish the privilege, BDO bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege are met. United States v. White, 950 F.2d 426, 430 (7th Cir. 1991). In the case at hand, BDO asserts the attorney-client privilege with respect to three broad classes of documents: (1) legal advice reflected in memoranda from outside counsel for BDO, (2) legal advice reflected in documents other than memoranda from outside counsel for BDO, and (3) communications with BDO in-house counsel.

A.  Outside Counsel (Memoranda)

In addition to protecting communications from a client to an attorney, communications from an attorney to a client are privileged if they constitute legal advice or would directly or indirectly reveal the substance of a client confidence. United States v. Defazio, 899 F.2d 626, 635 (7th Cir. 1990). This court finds that the legal memoranda prepared by outside counsel for BDO are within the scope of the attorney-client privilege. After carefully reviewing these documents, this court concludes that the memoranda in question were prepared in order to provide legal advice to BDO, in most cases, if not every case, in direct response to a BDO inquiry for such legal advice and based on confidential facts provided by BDO to its outside counsel. The memoranda evince that BDO

3

sought guidance from its outside counsel regarding various Internal Revenue Code provisions and regulations. The documents here are classic attorney-client material.

The government argues, however, that three outside law firms, Brown & Wood LLP ("Brown & Wood"); DeCastro, West, Chodorow, Glickfield & Nass, Inc. ("DeCastro West"); and Proskauer Rose LLP[4] ("Proskauer"), were not providing legal advice but instead were co-promoting tax shelters with BDO. The government contends that BDO and these three law firms were marketing partners, and the advice provided to BDO was unprivileged business advice, not privileged legal advice. In support of its position, the government cites to a recent opinion by Chief Judge Hogan, United States v. KPMG LLP, No. 02-0295 (TFH), 2004 WL 964953 (D.D.C. May 4, 2004). Chief Judge Hogan found, *inter alia*, that opinion letters written by Brown & Wood may not be privileged because the letters "appear to be nothing more than an orchestrated extension of KPMG's marketing machine." Id. at *9.[5] Here, however, evidence of any such coordinated partnership between BDO and the three outside law firms is lacking.

The government points this court to opinion letters issued to BDO clients by Brown & Wood, DeCastro West, and Proskauer. The government argues that the nineteen or so letters from Brown & Wood, approximately seven from DeCastro West, and about eight from Proskauer evidence a coordinated partnership between these law firms and BDO. Although the opinion letters are not

---

[4] Proskauer apparently did not issue opinion memoranda to BDO (but did provide other types of legal advice explained in the text below). However, because the analysis is the same with respect to all three outside law firms, this court will discuss the government's argument as to all three outside law firm, including Proskauer, here.

[5] Chief Judge Hogan gave KPMG ten days to submit a more detailed privilege log to support its claim of privilege over the Brown & Wood opinion letters. The government represents that KPMG did not do so. (Gov't Reply at 3 n.3.)

4

before this court for review, such opinion letters, standing alone, are not enough for this court to conclude that the outside law firms and BDO were co-promoters. The government also cites to a case currently pending before Judge Scheindlin in the Southern District of New York, Denney v. Jenkens & Gilchrist, No. 03-Civ.-5460 (SAS) ("Denney").[6] The plaintiffs in Denney allege, *inter alia*, that the law firm and accounting firm, including BDO, defendants were co-promoters of tax shelters. As BDO correctly points out, allegations in a complaint are merely that–allegations. They are not fact and cannot be relied on as such. See Tierney v. Vahle, 304 F.3d 734, 736 (7th Cir. 2002) ("We emphasize that [allegations in the complaint] are just allegations; they may for all we know be false."). In addition, none of the three outside law firms in this case is alleged in Denney to have engaged in wrongdoing. This court cannot rely on mere allegations contained in a complaint, particularly when the allegations do not involve the relevant three laws firms here, to support the government's argument regarding co-promotion. As a result, because the government has failed to submit adequate proof to establish that BDO and the three outside law firms in question were co-promoters, this court cannot find as such and cannot find that the advice provided with respect to *these* memoranda was merely business, as opposed to legal, advice. Consequently, the following legal memoranda from outside counsel, many of which are duplicate copies, are protected by the attorney-client privilege and are not required to be turned over to the government: 3, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 31, 32, 35, 36, 45, 46, 54, 57, 58, 59, 86, 89, 96, and 103.

---

[6] Judge Scheindlin's ruling on defendants' motions to compel arbitration in Denney can be found at 2004 WL 936843 (S.D.N.Y. Apr. 30, 2004).

B. <u>Outside Counsel (Documents Other Than Memoranda)</u>

The same analysis as stated above applies to the various e-mails, facsimiles, letters, summaries, and other correspondence submitted for *in camera* review. These documents are covered by the attorney-client privilege if their purpose was to seek or provide legal advice. After reviewing each of the documents in question, this court finds that the documents listed below were created in order to seek or provide legal advice. In addition, if legal advice to a client would be revealed by the disclosure of a document, such document is shielded from being produced to the government in response to the summonses. Here, this court finds that disclosure of certain handwritten notes that reflect the legal advice provided by BDO's outside counsel, based on confidential information conveyed by BDO, would reveal the privileged contents of the advice. Consequently, the handwritten notes on document number 38 are protected from discovery.

With respect to the other outside counsel correspondence, this court finds that they pertain to confidential communications either seeking or providing legal advice in connection with: (1) BDO's obligations under various Internal Revenue Code provisions (12, 37, 39, 40, 41, 42, 44, 49, 62, 75, 78, 80, 87, and 88)[7]; (2) IRS investigations, audits, and potential litigation (50, 51, 52, 53, 94, 95, 97, and 110); (3) the legal and regulatory ramifications of particular transactions (102); (4) an arbitration matter involving BDO (43, 47, and 48); and (5) a lawsuit threatened by a former BDO client (81, 82, 83, 84, and 85). Because, after a particularized review of the documents, this court concludes that each of the above was prepared in order to seek or provide legal advice, each is protected from disclosure. Finally, this court finds that the following documents reflect the advice

---

[7] It is possible that certain documents fall within more than one classification. However, for ease of review, each document has been placed into only one category.

from outside counsel and disclosure of them would reveal the substance of the attorney-client communication: 33, 34, 63, 64, 74, 76, and 79. Thus, they need not be produced by BDO to the government in response to the IRS summonses. However, the following documents are ordered to be disclosed to the government in their redacted forms[8]: 29,[9] 60, 61, 105, 107, and 108, as the redacted material reflects legal advice from outside counsel.

### C. In-house Counsel

The government does not dispute that communication with in-house counsel is protected to the same extent as that with outside counsel. In fact, "there is a presumption that a lawyer in a legal department of the corporation is giving legal advice, and an opposite presumption for a lawyer who works on the business or management side." Breneisen v. Motorola, Inc., No. 02 C 50509, 2003 WL 21530440, at *3 (N.D. Ill. July 3, 2003). The lawyer's position in the company is not dispositive, however. In the case at hand, after reviewing the documents, this court cannot find that BDO in-house counsel was providing business or management advice.

The government argues that BDO waived its privilege with respect to document numbers 1, 30, and 104 by disclosing the contents of this memorandum[10] to co-promoter Sentinel Advisors. Bearing this argument in mind, this court has reviewed documents 1, 30, and 104 and Government Exhibit 86, the July 20, 1999, BDO letter to Sentinel Advisors. After careful review, this court

---

[8] With respect to document numbers 60, 61, 105, 107, and 108, BDO submitted redacted and unredacted versions. This court has reviewed both versions.

[9] Document 29 is a duplicate copy of the memorandum attached to document 105 and should be redacted to the same extent as document 105 has been.

[10] Documents 1, 30, and 104 all appear to be the same or similar draft versions of a memorandum dated May 12, 1999.

7

concludes that the letter to Sentinel Advisors did not disclose the substance of the BDO memorandum (1, 30, and 104). The BDO memorandum and letter clearly do not contain identical subject matter, as the government alleges. Consequently, this court finds that BDO has not waived its attorney-client privilege with respect to document numbers 1, 30, and 104. Furthermore, this court finds that the following documents are protected from disclosure: (1) documents reflecting communications to or from BDO employees from or to BDO's general counsel regarding BDO's consideration of various transactions and the application of registration and list maintenance requirements under the Internal Revenue Code (1, 2, 4, 5, 30, 90, 91, 92, 93, 98, 99, 100, 101, 104, 106, and 109); and (2) documents reflecting communications to or from BDO in-house lawyers concerning comments to various agreements (55, 56, 65, 66, 67, 68, 69, 70, 71, 72, and 73). Consequently, because disclosure of the above-listed documents would directly or indirectly reveal the contents of the privileged communication, these documents do have to be produced to the government in response to the summonses.

II. <u>Work Product</u>

BDO asserts that six documents (77, 81, 82, 83, 84, and 85) are protected from disclosure by the work product doctrine.[11] The parties seem to disagree as to the appropriate standard for evaluating claims of work product protection. It appears to this court that the Seventh Circuit has instructed the district courts to "look to whether in light of the factual context 'the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'" <u>Logan v. Commercial Union Ins. Co.</u>, 96 F.3d 971, 976-77 (7th Cir. 1996) (citation omitted); <u>see also</u> FED.

---

[11] This court has already found that the attorney-client privilege applies with respect to document numbers 81-85.

8

R. CIV. P. 26(b)(3). In applying this standard, this court concludes that the six documents in question here were prepared because of the prospect of litigation.

The government argues that BDO has changed the descriptions of these documents on its privilege log in order to attempt to show that the documents were created after BDO subjectively anticipated litigation. After reviewing the documents, this court has satisfied itself that each of the six was created in anticipation of litigation. In document number 77, BDO employees discuss the retention of an expert witness "in the event of litigation," i.e., potential litigation. This document clearly was prepared in anticipation of the prospect of litigation and thus need not be disclosed to the government. As discussed above, document numbers 81–85 pertain to communication regarding litigation with a former BDO client. Again, after analyzing each document, this court finds that each was created in anticipation of litigation, and the government has not made the showing under Rule 26(b)(3) that it has a "substantial need" for the documents and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Consequently, these documents also are protected from disclosure by the work product doctrine.

III.  Crime-Fraud Exception

The government's final argument is that BDO's claims of privilege are void under the crime-fraud exception to the attorney-client privilege. The crime-fraud exception applies when a client seeks legal advice in order to further a future crime or fraud. United States v. Zolin, 491 U.S. 554, 562-63 (1989). For this court to conduct an appropriate *in camera* review on this issue, the government, the party seeking such a review, must make "'a showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. at 572 (citation omitted).

9

Although this court has serious doubts as to whether the IRS has met its burden here, this court has nonetheless examined the documents. This court cannot infer, based on a review of the documents and bearing in mind the government's contentions, that BDO sought legal advice from outside or in-house counsel to perpetrate a crime or fraud, particularly in light of the uncertain and complex nature of the Internal Revenue Code and the regulations thereunder. Even assuming the allegations of the Denney complaint are true, nothing suggests that any document before this court falls within the crime-fraud exception. This court agrees with BDO that any finding of "mutual fraud" by the court in Denney has no bearing on BDO's communications with its outside counsel, none of which is alleged to have engaged in wrongdoing or is named as a defendant in Denney. In fact, the Denney complaint does not identify any outside BDO counsel at issue here nor any in-house BDO counsel as being part of any alleged mutual fraud. The government has based its arguments for the application of the crime-fraud exception on what to this point is speculation and innuendo. After reviewing the documents, this court finds no evidence that BDO communicated with its outside counsel or in-house lawyers to further a crime or fraud. Accordingly, the crime-fraud exception does not eviscerate BDO's attorney-client privilege.

## IV. Conclusion

For the reasons explained above, with respect to the 110 documents submitted for *in camera* inspection and claimed by BDO on its own behalf to be protected by the attorney-client privilege and/or work product doctrine, the government's motion to compel is granted with respect to redacted document numbers 29, 60, 61, 105, 107, and 108. BDO is ordered to turn these redacted documents over to the IRS no later than July 12, 2004. The government's motion is denied as to all other documents. All previously set dates remain.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: June 28, 2004