

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>BDO SEIDMAN, LLP, )<br>)<br>Respondent, )<br>)<br>and )<br>)<br>ROBERT S. CUILLO, et. al., )<br>)<br>Intervenors. ) | No. 02 C 4822 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

As this court discussed in greater detail in its March 30, 2005 memorandum opinion and order, ("March 30, 2005 opinion"), the Internal Revenue Service ("IRS" or "Government"), is currently engaged in an investigation into whether the accounting and consulting firm BDO Seidman, LLP ("BDO"), sold allegedly abusive tax shelters to BDO's clients, ("Intervenors"). (Dkt. Nos. 177, 178); *United States v. BDO Seidman, LLP*, No. 02 C 4822, 2005 WL 742642 (N.D. Ill. Mar. 30, 2005). This court's March 30, 2005 opinion held that all but one of the 267 documents provided by the Intervenors for this court's *in camera* review were protected from disclosure to the IRS by the attorney-client privilege, tax practitioner privilege and or work product doctrine. *Id.* at *15. For the one exception, document A-40, this court held that it had determined through its *in camera* review of document A-40 that a *prima facie* case existed for

the application of the crime-fraud exception. *Id.* at *16.

This court ordered additional briefing from the parties to determine whether Intervenor Robert Cuillo, or any other Intervenors wishing to assert privilege over the document, should be denied the application of privilege for document A-40 under the crime-fraud exception. For the reasons set forth below, this court holds that the Intervenors have failed to provide sufficient explanation to rebut this court's finding of a *prima facie* case for the application of the crime-fraud exception for document A-40. Consequently, this court holds that the crime-fraud exception must be applied to document A-40, and therefore a claim of privilege cannot be used to prevent the disclosure of document A-40 to the IRS under the IRS's civil subpoenas.

## BACKGROUND

A primary argument advanced by the IRS in this litigation is that BDO and the Intervenors cannot seek the benefit of the attorney-client privilege, tax practitioner privilege or the work product doctrine because BDO and the Intervenors were engaged in the fraudulent activity of using illegal tax shelters and hiding that activity from the IRS. The IRS has continually argued that this alleged illegal activity prevents the application of any privilege to the 267 Intervenor documents, including document A-40, that this court reviewed during the summer and fall of 2004. The IRS made similar arguments when this court performed an *in camera* review of 110 BDO documents during the spring and summer of 2004. *United States v. BDO Seidman, LLP*, No. 02-4822, 2004 WL 1470034 (N.D. Ill. June 28, 2004).

This court rejected the IRS' broad assertion that BDO and the Intervenors were denied the right to assert privilege under the crime-fraud exception when this court considered the 110 BDO documents in June 2004, No. 02-4822, 2004 WL 1470034, at *4, and the 267 Intervenor

2

documents in March 2005. No. 02 C 4822, 2005 WL 742642, at *9. The blanket application of the crime-fraud exception would be inappropriate because this court characterized much of the IRS' arguments as being based on "speculation and innuendo." No. 02 C 4822, 2005 WL 742642, at *9; No. 02-4822, 2004 WL 1470034, at *4. The fact that the IRS has characterized a transaction as abusive and unlawful does not mean that the characterization is proper as a matter of law when considering whether to apply the crime-fraud exception. No. 02 C 4822, 2005 WL 742642, at *9. Furthermore, in light of the complexity and uncertainties of the IRS code, the fact that determining whether the involved transactions are in fact unlawful is one of the ultimate questions of this litigation, and the lack of evidence presented by the IRS to that point in the litigation, this court's March 30, 2005 opinion held that "[a] determination by this court that BDO and the Intervenors engaged in fraudulent and criminal activity ... would be premature and would place the proverbial 'Cart before the Horse.'" *Id.*

This court did, however, in both its June 28, 2004 and March 30, 2005 opinions, consider whether the crime-fraud exception should be applied on a document-by-document basis when the court performed its *in camera* review. In its June 28, 2004 memorandum opinion and order, ("June 28, 2004 opinion"), this court held that there was no evidence to substantiate the application of crime-fraud exception to the 110 BDO documents. In its March 30, 2005 opinion on the 267 Intervenor documents, this court held that there was only sufficient evidence to support a *prima facie* finding for the application of the crime-fraud exception to one document, document A-40. The March 30, 2005 opinion instructed the parties to submit additional briefing on document A-40. The present memorandum opinion and order addresses the additional briefing presented by the parties on the question of whether the crime-fraud exception should be

applied to document A-40.

## ANALYSIS

As this court stated in its March 30, 2005 opinion, "[u]nder the crime-fraud exception, communications that would otherwise be protected by the attorney-client privilege, [as well as the tax practitioner privilege], lose their protected status if they were 'made for the purpose of getting advice for the commission of a fraud or crime.'" No. 02 C 4822, 2005 WL 742642, at *8 (citing *United States v. Segal*, No. 02 CR 112, 2004 WL 830428, at *1 (N.D. Ill. Apr. 16 2004) (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989))). "'The crime-fraud exception applies where the party attempting to circumvent the privilege, [in the present case the IRS,] can meet the following test: (1) a *prima facie* showing of [a crime or] fraud, and (2) the communications in question are in furtherance of the misconduct.'" No. 02 C 4822, 2005 WL 742642, at *8 (citing *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 535 (N.D. Ill. 2003) (citing *Pandick, Inc. v. Rooney*, No. 85 C 6779, 1988 WL 61180, at *2 (N.D. Ill. June 2, 1998))).

As this court also stated in its March 30, 2005 opinion, the Seventh Circuit in *United States v. Davis* has explained the application of the crime-fraud privilege as follows:

> [To drive away the privilege ... there must be something to give colour to the charge; there must be *prima facie* evidence that it has some foundation in fact. When the evidence is supplied, the seal is broken. [The Seventh Circuit has] also noted that *prima facie* evidence did not mean enough to support a verdict in favor of the person making the claim. Indeed [the Seventh Circuit has] held that a party has established a *prima facie* case whenever it presents evidence sufficient to require the adverse party, the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation. [The Seventh Circuit has also] stated that if the district court finds such an explanation satisfactory the privilege remains and that the district court's decisions regarding these matters may be disturbed only for an abuse of discretion.

No. 02 C 4822, 2005 WL 742642, at *8 (citing 1 F.3d 606, 609 (7th Cir. 1993) (internal citations omitted)).

In order to guide this court's *in camera* evaluation of the 267 documents when

4

considering whether a *prima facie* case for the crime-fraud exception had been established, this court identified eight potential indicators of potential fraud. No. 02 C 4822, 2005 WL 742642, at *12. The court developed these indicators based on the arguments presented in the parties' briefs, evidence presented by the parties through declarations and supporting documents, and a review of the related cases of *Denney v. Jenkens & Gilchrist*, 340 F. Supp. 338 (S.D.N.Y. 2004), *Miron v. BDO Seidman, LLP*, 342 F. Supp. 324 (E.D. Pa. 2004), and *United States v. KPMG*, 316 F. Supp. 2d 30 (D.D.C. 2004). These eight indicators of potential fraud are: (1) the marketing of pre-packaged transactions by BDO; (2) the communication by the Intervenors to BDO with the purpose of engaging in a pre-arranged transaction developed by BDO or third party with the sole purpose of reducing taxable income; (3) BDO and/or the Intervenors attempting to conceal the true nature of the transaction; (4) knowledge by BDO, or a situation where BDO should have known, that the Intervenors lacked a legitimate business purpose for entering into the transaction; (5) vaguely worded consulting agreements; (6) failure by BDO to provide services under the consulting agreement yet receipt of payment; (7) mention of the COBRA transaction; and (8) use of boiler-plate documents. No. 02 C 4822, 2005 WL 742642, at *12.

This court was clear to point out in its March 30, 2005 opinion that its *in camera* review on the question of whether a *prima facie* showing for the application of the crime-fraud exception was not limited to these eight factors. "The court does not limit itself to the indicators in determining whether a *prima facie* case for the application of the crime-fraud exception. Instead, this court looks to the 'totality of the circumstances,' *United States v. BDO Seidman, LLP*, No. 02 C 4822, 2002 WL 32080709 (7th Cir. Dec. 18, 2002), surrounding each document

5

in order to determine whether there is 'something to give colour to the charge ... so as to require the [Intervenors], the one[s] with superior access to the evidence and in the best position to explain things, to come forward with that explanation.' *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993) (internal quotations and citations omitted). Furthermore, its important note that an indication of potential fraud does not mean that fraud exists sufficient for a *prima facie* finding. These factors are merely guideposts to assist this court in its *in camera* evaluation." No. 02 C 4822, 2005 WL 742642, at *12.

The Intervenors's present position is that document A-40 is not communication in furtherance of a crime or fraud, but was part of the common financial planning activity of selling off investments towards the end of a year in order to take advantage of tax savings. According to the Intervenors' April 14, 2005 memorandum, Intervenors including Intervenor Cullio, invested in a portfolio of emerging market distressed debt and then sought to sell that debt at the end of a year to lessen their tax liability. (Dkt. No. 181 at pg. 2-3). According to the Intervenors' brief, there is no fraud or crime in this behavior, but instead this is a common financial planning activity performed by "every stock broker, financial planner, tax advisor and investor in America" at the end of every year. *Id.* at pg. 4.

The government counters that document A-40 is not part of legitimate year-end tax planning, but instead is part of the overall abusive sham tax shelter transaction perpetrated by BDO and invested in by Intervenor Cullio and others. The government provides the Fifth Supplemental Declaration from IRS Revenue Agent Sandra Alevlo ("Alevlo"), in support of its position and the Alevlo's declaration in turn is supported by a variety of documents previously obtained by the IRS from BDO and the Intervenors related to the distress debt transaction. (Dkt.

6

No. 185).

Upon review of the parties' submissions, this court holds that the Intervenors have failed to meet their burden of providing a satisfactory explanation as to why document A-40 should not be disclosed under the crime-fraud exception. The Intervenors, the party "with superior access to the evidence and in the best position to come forward" with an explanation that rebuts the finding of the *prima facie* case for the application of the crime-fraud exception, have failed to meet their burden of providing a sufficient explanation to rebut this court's March 30, 2005 finding for a *prima facie* case for the application of the crime-fraud exception for document A-40. No. 02 C 4822, 2005 WL 742642, at *8 (citing *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993) (internal citations omitted)).

The government's position, as supported by Revenue Agent Alvelo's declaration, is substantially more comprehensive, complete and believable in comparison to the Intervenor's position. If there was no burden placed on either party, the court would be more likely to believe the government's position on this matter. In light of the fact that the burden is on the Intervenors, the party with greater access to information, the Intervenors' inability to provide a valid non crime-fraud explanation becomes even more acute.

The Intervenors' position does not prevail here for several reasons. First, the Intervenors present the position that Intervenor Cullio was merely selling off assets in which he had previously invested in order to take advantage of the loss for tax purposes. However, this position would require Intervenor Cullio to have previously invested in the assets, presumably hoping to turn a profit thereon, the investment had not provided for a profit and that Intervenor Cullio was merely trying to salvage a tax advantage from his failed investment.

7

However, based on the information provided through Revenue Agent Alvelo's declaration and supporting materials, it appears that the immediate activity in transaction was for Cullio to obtain a loss. The initial investment in the distressed debt appears to have occurred in late 2001, the same period in which Cullio was looking to receive the loss. This contradicts other materials previously provided by the Intervenors in which they claim that their primary purpose for investing in these transactions was the hope of making a profit.

The court's initial conclusion that Intervenor Cullio appeared only to be interested in obtaining a loss is supported by the memorandum written by Michael Kerekes dated May 2, 2001 and included as government exhibit A-57 in support of Revenue Agent Alvelo's declaration. Kerekes states in the memorandum that one of the issues in the distressed debt transaction is "whether the debt is subject to a marking-to-market requirement under IRC § 475, *which would of course render it useless for our purposes.*" (Dkt. No. 185, Gov't Ex. A-57 (emphasis added)).

Marking a security to market value requires the revaluing of the security from its book value to fair market value. (For a general discussion of accounting concept of mark to market and IRC § 475 *see Bank One Corp. v. Commissioner*, 120 T.C. 174, 2003 WL 2012540 (T.C. 2003)). The effect of the "marking-to-market" on "distressed debt" would mean the elimination of a potential deductible tax loss. The key to the court is the statement in Kerekes' memorandum that the application of mark to market, and thus the elimination of the potential tax loss, "would of course render it [the distressed debt] unless for our purposes." (Dkt. No. 185, Gov't Ex. A-57).

The court must acknowledge, of course, that investing in a debt security for the potential tax advantages is not by itself a crime or fraud. The Intervenors are correct in their assertion that

it is a normal practice for individuals to liquidate their investments to take advantage of losses for tax purposes. The problem in this case, however, is that the Intervenors have failed to provide any explanation in their briefs or supporting documentation to overcome the government's position that this particular transaction is in violation of the Internal Revenue Code.

Furthermore, this is the first time that the government has presented documentation in which a BDO employee states that the sole purpose of the activity is to obtain a loss. In other documents discussing the other transactions the court previously reviewed *in camera*, such as opinion letters, engagement letters and client representations, there were assertions from BDO and the Intervenors that one of the primary purposes for the transaction was to make a profit. In reviewing the government's prior assertions about the nature of the BDO transactions, the court found itself unable to move beyond the fact that the documents the court was reviewing *in camera* included statements that there was a profit motive and therefore there was evidence that contradicted the government's position that the sole motive of the BDO transactions was to create losses so as to evade income tax. The May 2, 2001 Kerekes memorandum is the first time that this court has identified evidence which appears to suggest that the sole motive was to obtain a loss.

The court wishes to be clear that this memorandum opinion and order is limited to the question of whether the crime-fraud exception eviscerates the Intervernors' privilege claim on document A-40. The court is not reexamining its June 28, 2004 and March 30, 2005 opinions in which the court rejected the government's broader position that everything done by BDO and the Intervenors is unlawful and that the apparently legitimate activities are merely a ruse to cover up the alleged unlawful activity. The court singled out document A-40 because it appeared to this

court, "under the totality of the circumstance," *United States v. BDO Seidman, LLP*, No. 02 C 4822, 2002 WL 32080709 (7th Cir. Dec. 18, 2002), that there was sufficient evidence for a finding of a *prima facie* case of the crime-fraud exception. Because of that, the appropriate procedure was to shift the burden to the Intervenors to bring forward a valid explanation since the Intervenors are the ones "with superior access to the evidence and in the best position to explain things." No. 02 C 4822, 2005 WL 742642, at *8 (citing 1 F.3d 606, 609 (7th Cir. 1993) (internal citations omitted)). The Intervenors have failed to meet this burden and therefore the only explanation that the court has for document A-40 is the government's position. The larger issue of whether the overall activities of BDO and the Intervenors are lawful or unlawful remain for investigation by the IRS and potential future litigation between the parties.

## CONCLUSION

For the reasons stated herein, this court holds that Intervenors have failed to provide sufficient explanation to rebut this court's finding of a *prima facie* case for the application of the crime-fraud exception for document A-40. Consequently, this court holds that the crime-fraud exception must be applied to document A-40 and therefore a claim of privilege cannot be used to prevent the disclosure of document A-40 to the IRS under the IRS's civil subpoenas. The Intervenors are to disclose document A-40 forthwith to government counsel. This case is set for a report on status on May 31, 2005.

ENTER:

DATE: May 17, 2005

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge